IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-CV-02766 (NRN)

WILMAR PEREZ and RUBY
ORANTES,

                              Plaintiffs,

    vs.

DENCO CONSTRUCTION LLC.
and BRUCE RAHMANI, individually,

                              Defendants.

## <u>MOTION FOR A PROTECTIVE ORDER</u><br><u>and CORRECTIVE NOTICE TO THE POTENTIAL FLSA COLLECTIVE AND CLASS</u>

Plaintiffs Wilmar Perez ("Perez") and Ruby Orantes ("Orantes") (collectively "Plaintiffs"), by and through undersigned counsel, hereby file this motion for a protective order. Defendants' counsel has not responded to Plaintiffs' two separate e-mails requesting whether they oppose or consent to this application. This motion is based on the *latest* attempt by Defendants to unethically prevent this matter from moving forward. This time Defendants seek to prevent the potential FLSA Collective/Class from joining this action.

As discussed below, Defendants are requiring their employees to sign a document (the "Document") which prevents them from joining this lawsuit (the "Action"). As a remedy, we request that the Court issue a Protective Order preventing Defendants from continuing to discuss the pending action with its employees. In addition, we request that the Court order the Document to be unenforceable.

**<u>Introduction</u>**

The *latest* actions of Defendants recall Oliver Wendel Holmes' prediction theory of law. Bad

men, Holmes said, care little for ethics or lofty conceptions of natural law. Rather 'bad men', only care about avoiding paying damages or landing in jail. Here, Defendants care little about the rights of their workers or acting in a lawful manner. Rather, they simply care about minimizing their exposure.

**Relevant Background**

As the Court is aware, this is a class action lawsuit brought by former construction workers of Defendants. Plaintiffs allege that Defendants paid Plaintiffs and the FLSA Collective/class for the first 40 hours worked each week by Denco but that Denco paid the overtime hours at straight time without withholdings from fictitious companies under Denco's control or personal checks. See Dkt 25.

Most construction workers are immigrants from Spanish speaking countries. The potential class members have a limited understanding of the English language. This position is based on the fact that all three Plaintiffs in this action are from a Spanish speaking country who need a translator and conversations with Plaintiffs.

**Timeline since this Action was Commenced**

On October 7, 2024 this lawsuit was filed. This lawsuit was originally brought by three Plaintiffs as a FLSA Collective: Wilmar Perez, Ruby Orantes and Daniel Fuentes. Dkt 001. All three Plaintiffs are from Spanish speaking countries and have a limited understanding of the English language. After the lawsuit was commenced, Defendants sought to directly settle with Plaintiffs. Dkt 45 and ¶ 2 of Wilmar Perez declaration ("Perez Decl.") Defendants directly settled with Funetes without Fuentes' attorney's knowledge. Dkt 45. The settlement agreement was in English. Dkt 45-2 Exhibit A. In addition, Defendants have repeatedly sought to settle directly with the two remaining Plaintiffs. Dkt 45-1, 45-2 and Perez Decl. This includes providing Perez with a settlement agreement in English. ¶ 2 of Perez Decl.

2

On December 18, 2024 Plaintiffs filed an amended complaint seeking to bring this action as both a FLSA Collective and Class Action. See Dkt 25.

As a result of Defendants' attempt to directly settle with Plaintiffs, Plaintiffs' counsel asked Defendants' counsel to request that their client stop directly contacting Plaintiffs without Plaintiffs' counsel present. Dkt 45-1.   As a result, Plaintiffs filed a motion requesting that the Court intervene and, in addition, attorney fees as provided for under the FLSA and CO law with respect to the Fuentes' settlement.  Dkt 45.  In this same application, Plaintiffs requested that the Court order a settlement conference.  Tellingly, Defendants also oppose that request with the logical inference being that it is to their benefit to rather continue to directly negotiate with Plaintiffs.  That motion is pending before the Court.

On November 20, 2024 Plaintiffs moved for conditional certification.  Plaintiffs' motion for conditional certification is pending before the Court.  Dkt 13.

**Latest Actions of Defendants**

In addition to seeking to directly settle with Plaintiffs, Defendants more recently now seek to prevent a potential class action from moving forward.  Specifically, Defendants are requiring their employees to sign the Document.  ¶ 2 of Perez Decl. If the respective employee refuses to sign, they are fired. Id.  The Document—which on information and belief is in English based on Fuentes' settlement agreement and the draft provided to Perez—prevents the respective current employee of Denco from joining this lawsuit.  Employees of Denco are given $500 for signing the Document which in virtually all circumstances will be less than their potential damages. Id.  As Defendants have not produced this document, it is unclear if the Document includes an arbitration clause.

Defendants' counsel denies having any "information" that Defendants have required their employees to sign this Document. See ¶ 2 of declaration of Jacob Aronauer. Based on the communication between the parties' respective counsel, though, it is unclear whether Defendants'

counsel asked their clients if they partook in this action.  In other words, Defendants' counsel is seemingly turning a blind eye (again) toward their clients' actions.

**Applicable Law**

The Supreme Court has recognized a court's broad discretion to manage communications in class actions. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981) ("[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Griffin v. Aldi, Inc.*, 2017 U.S. Dist. LEXIS 71840 at * 10  (N.D.N.Y. May 11, 2017) (quoting *Agerbrink v. Model Serv. LLC,* 2015 U.S. Dist. LEXIS  145563, 2015 WL 6473005, at * 2 (S.D.N.Y. Oct. 27, 2015); and citing *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261 (N.D.N.Y. 2009)) ("'District courts have 'both the duty and the broad authority' to govern the conduct of counsel and parties in class actions brought under [Rule 23] and collective actions brought under the FLSA'" and this authority exists prior to certification).

Rule 23(d) prohibits such unsupervised and deceptive communications with putative class members, where a defendant in a pending case attempts to obtain invalid releases from class members. Specifically, releases that do not inform the class members of what rights they have that are being released or that signing the agreement could prevent them from participating in a pending class action. *See, e.g., Griffin*, 2017 U.S. Dist. LEXIS 71840 at * 14-21; *Guifu Li v. A Perfect Day Fran., Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (holding that a defendant engaged in impermissible coercive conduct by obtaining class opt-out forms from employees on an *ex parte* basis); *County of Santa Clara v. Astra USA, Inc.*, 2010 U.S. Dist. LEXIS, at *22-23 (N.D. Cal. July 8, 2010) (holding that a defendant's effort to obtain settlements from putative class members' on an *ex parte* basis for less than the damages at issue in the case and without informing the putative class members of the case was impermissible).

4

These courts have generally required defendants to provide the employees notice of the case, explanation of the claims brought, and contact information for Plaintiffs' counsel. *See Burford v. Cargill, Inc.,* 2007 U.S. Dist. LEXIS 1679, at * 4-5 (W.D. La. Jan. 9, 2007) (holding that releases obtained by the defendant from putative class members on an *ex parte* basis "are abusive and threaten the proper functioning of the instant litigation"); *Williams v. Sake Hibachi Sushi & Bar, Inc.,* 2018 U.S. Dist. LEXIS 162293, at * 15 (N.D. Tex. Sept. 21, 2018) (ordering corrective notice to members of a putative collective action who signed waivers in response to Defendant's *ex parte* communication and permitting such individuals to challenge the agreements as voidable); *Griffin*, 2017 U.S. Dist. LEXIS 71840, at *24 ((directing corrective notice be sent to individuals who signed release after commencement of lawsuit and holding "[t]he corrective notice should provide Plaintiffs' counsel's contact information and inform these former store managers that if they are confused about their right to participate in this litigation (or if they feel that they were misled or coerced by Aldi in connection with the separation agreements), they may get in touch with Plaintiffs' counsel")); *Spence v. Irving Holdings, Inc.*, 2010 U.S. Dist. LEXIS 140329, at , at *4 (N.D. Tex. Dec. 15, 2010) (courts have balanced parties' First Amendment rights with a court's role in regulating communication with potential class members "both before and after a class [is] conditionally certified under the FLSA" and have often prohibited misleading communications).

As with Rule 23, the Supreme Court has made clear that courts have 'discretionary authority to oversee the notice-giving process in an FLSA collective action. *OConner v. Agilant Solutions, Inc.,* 444 F. Supp. 3d 593, 600 (S.D.N.Y. 2020) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). "The same principles that govern communications with putative class members in a class action under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA." Id. (citations omitted). Significantly, this authority exists prior to certification. See, e.g., *Agerbrink v. Model Serv., LLC*, 2015 U.S. Dist. LEXIS 145563, at * 7

5

(S.D.N.Y. Oct. 27, 2015).   Courts "may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit."[1] Id.

Courts have curtailed defendants' ability to engage in these types of coercive communications with putative class members.  Not only do they disrupt the proper function of a class or collective action, but they also implicate ethical prohibitions on communicating with represented parties. *See Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. April 9, 2001).[2]  Thus, Defendants conduct warrants the Court exercising its discretion to protect the putative class and collective members.

      **1.**    Defendants Should be Prohibited From Seeking Releases From Employees Without Their Knowledge of Their Rights and That This <u>Case Has Been Filed on Their Behalf</u>

Courts generally require that the party moving for a protective order under Rule 23(d) must make two showings: "(1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper

---

[1] *See also Williams*, 2018 U.S. Dist. LEXIS 162293, at *6; *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 U.S. Dist. LEXIS 39764, at *3-6 (C.D. Cal. Sept. 27, 2012) (finding a waiver misleading where it did not include, *inter alia*, any information regarding the class action, the complaint, or plaintiff's counsel's contact information).

[2] These types of communications can also implicate ethical rules prohibiting communication with represented parties. For example, one court explained that "[t]he 'truly representative' nature of a class action affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct." <u>Dondore</u>, 152 F. Supp. 2d at 666 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52 (1974)) ("'class action representation' belongs to all parties, even 'asserted class members who were unaware of proceedings brought in their interest."). "[P]utative class members stand at least in a fiduciary relationship with class counsel." Id. (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).  Further, "[a]s a practical matter, a court cannot decide the issue of class certification immediately upon the filing of the complaint. Discovery is often required and the preparation and study of briefs is necessary.  Thus, certain benefits must be afforded the putative class members in the interim.  As the tolling of limitations is needed to further the salutary purposes of class actions, restraints are likewise needed against communications with putative class members until the issue of class certification can be determined. Id.; *see also Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 667-70 (E.D. Tex. 2003) (sanctioning and enjoining the employer from communicating *ex parte* with potential class action members because the employer intentionally attempted to subvert the court's role in a FLSA collective action by unilaterally sending a misleading and coercive letter to potential plaintiffs that encouraged those persons not to join the case); *Haffer*, 115 F.R.D. at 512 (holding pre-certification communications by defense counsel urging potential class members not to meet with class counsel violated Model Code DR 7-104).   Therefore, it is appropriate for this Court to prohibit further communications that may violate ethics rules.

function of the litigation." <u>Ojeda-Sanchez v. Bland Farms</u>, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009). Both factors are preset.

In this action, Defendants have already disseminated the Document to the putative class and collective members. We have no reason to believe that the Document informed putative class and collective members about this pending lawsuit brought on their behalf and/or their rights under Federal and CO law. Similarly, the Document most likely failed to advise the putative collective and class members they would be losing their ability to vindicate their rights in this already-pending lawsuit in Court in a representative action.

The Court's discretion to enter appropriate orders under Rule 23(d) facilitates the Court's obligation to "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The rule contemplates "that putative class members will make an informed decision about their decision to opt out of a class," *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000), and thus imposes a duty upon the court "to ensure that all putative class members have a genuine choice" about whether or not to participate in an action. <u>Id</u>.; *see Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 2009 U.S. Dist. LEXIS 22397, at * 12 (N.D. Ohio Mar. 19, 2009) ("class members need to be able to make an informed decision on participation"); *Payne v. Travenol Labs., Inc.,* 673 F.2d 798, 841 (5th Cir. 1982) (noting the "trial court's affirmative duty as monitor and guardian for the interests of absent class members"). It is obvious that "there are a number of factors that class members are entitled to know before deciding whether or not to opt out of any class," *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1243-44, all of which were not provided here where no notice of this action was provided. As courts have recognized, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203.

The Document is the exact type of communications that carry "an inherent risk of prejudice and opportunities for impropriety." *OConner*, 444 F. Supp. 3d at 601; *Griffin*, 2017 U.S. Dist. LEXIS 71840, at \*10-11 (quoting *Hinds County v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011)) ("Courts must act vigilantly 'to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action'" and noting "FLSA cases present significant opportunities for improper communications that undermine the collective action process").    Indeed, Defendants' communications with current employees are particularly "sensitive to coercion." *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal. 2014). "Because FLSA plaintiffs must opt-in, unsupervised unilateral communications . . . can sabotage the goal of the FLSA's informed consent requirement by planning the slightest seed of doubt or worry." *Agerbrink*, 2015 WL 6473005, at \*3; 2017 U.S. Dist. LEXIS 71840, at \*11.

Here, Defendants' efforts to obtain releases – and a waiver of their right to participate in a representative action – from putative class members is akin to soliciting employees to opt out of a class or prevent them from joining as an FLSA opt-in Plaintiff before notice has been disseminated, which is impermissible under Rule 23 and the FLSA. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests.  Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule."); *Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 699 (W.D. Tex. 2015) (sanctioning Defendant's *ex parte* communication with class members designed to discourage participation in a collective action lawsuit and "allow[ing] Plaintiffs to send the corrective notice to all [] class members by U.S. mail.  The corrective notice [was required to] be posted by Defendants at their places of business in a location visible to employees.  Defendants [were also required to] bear the cost of sending the corrective notice, and [to] further pay Plaintiffs'

8

reasonable attorneys' fees incurred in bringing the Motion.").

Courts that have ordered protective orders in similar circumstances have recognized that their authority to regulate communications under Rule 23(d) applies even where a class has not yet been certified.  For example, in *Guifu Li*, the court limited the defendant's communications with class members prior to class certification, noting that "the underlying rationale . . . does not depend on the certification of the class but instead on the inherent undermining of the class action process when opt-outs are solicited *ex parte*." 270 F.R.D. at 518*; Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23(d) provides authority for court to regulate communications between a party and class members, even before a class has been certified); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.,* 2001 U.S. Dist. LEXIS 13893 at * 20 (S.D.N.Y. Sept. 7, 2001) (sending out corrective notice to prevent potential abuse by defendant *prior* to Rule 23 class certification in non-wage case); *Burrell v. Crown Cent. Petroleum, Inc.,* 176 F.R.D. 239, 243 (E.D. Tex. 1997) (recognizing that Rule 23 permits a court to limit contact between defendants and the not yet certified class); *Hampton Hardware, Inc. v. Cotter & Co.,* 156 F.R.D. 630, 634 (N.D. Tex. 1994) (noting that "the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class"); *Haffer v. Temple Univ. of Commonwealth Sys. Of Higher Educ.,* 115 F.R.D. 506, 512 (E.D. Pa. 1987).

Like Rule 23, federal courts have also exercised their supervisory power to limit and correct misleading communications prior to FLSA or Rule 23 class certification. *Billingsley v. Citi Trends, Inc.,* 560 Fed.Appx. 914, 922 (11th Cir. 2014)) (Courts have authority to limit communications where misleading and finding failure to provide sufficient information about a pending collective action is misleading as "employees have a 'right ... to make an informed choice as to whether to participate in [an] FLSA collective action'"); *Marino v. CACafe, Inc.*, 2017 U.S. Dist. LEXIS 64947, at *2 (N.D.

9

Cal. Apr. 28, 2017) ("[the Court finds it appropriate to send a corrective notice…to protect putative class members and safeguard the integrity of the process.  The Court also finds it appropriate to order [Defendants] to cease communication with putative class members…until this Court has ruled on the motion for conditional certification of the collective action."); *Bullock v. Auto. Club of S. California*, 2002 U.S. Dist. LEXIS 7692, at \*13 (C.D. Cal. Jan. 28, 2002) ("Although the collective class is certified for the FLSA claims, the Court finds certification is not required to order Corrective Notice"); *Potts v. Nashville Limo and Transport LLC,* 2016 U.S. Dist. LEXIS 53217 at \*61-65 (M.D. Tenn. April 19, 2016) (prohibited further communication by defendant with FLSA opt-in plaintiffs where defendant attempted to enter into settlement agreements without providing enough information for the opt-in plaintiffs to evaluate their claims).

Here, the Court should exercise its authority to prohibit Defendants from seeking releases from the putative class and collective members, where Denco is offering far less compensation than Plaintiffs claim that the impacted employees are entitled to, and where the employees have no reason to know yet of their rights or that this case has been filed on their behalf.[3]  Defendants' conduct presents the very real potential of depriving putative class members of their opportunity to participate in this case or otherwise vindicate their claims under Rule 23 or the FLSA in multiple ways.  The dissemination of Defendants' Release will obviously reduce the efficacy of Rule 23 by preventing the ability of class members to participate in litigation brought on their behalf by having them resolve these claims for pennies on the dollar and by limiting Denco's liability without court oversight.  Even if an employee rejects the release, the Document coercively requires an employee to consent to individual arbitration of all claims – while explicitly prohibiting participation in the Rule 23 class or collective action – which prevents the putative class and collective members from voluntarily

---

[3] Plaintiffs and the putative class and collective members are entitled to liquidated damages under the FLSA and CO equal to the full amount of their untimely paid wages.  Unless the respective employee only worked for Defendants for a few weeks, it would exceed the sum of $500.

participating in this action, again without these employees even being informed of this pending litigation and without judicial oversight. As such, this Court should exercise its authority to act to prevent Denco's communications with class members from impinging on their rights.

The need to protect these employees' ability to pursue these claims and participate in this case is particularly acute because the release has been presented in an inherently misleading and coercive context. Each and every recipient of the Document is a current employee. Courts have recognized the real concern of coercion in cases where employees are in an ongoing business relationship with the employer as a current employee. *Ojeda-Sanchez*, 600 F. Supp. at 1379-80 ("[W]here the . . . class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.") (quoting *Belt*, 299 F. Supp. 2d at 688); *Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 568 (D. Conn. 2011) ("When a defendant is in an ongoing, current business relationship with members of a putative class, for example an employment relationship, it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims").

Moreover, Denco's failure to inform the putative collective and class members of their rights under the FLSA and NYLL or of this pending litigation brought on their behalf leaves them without sufficient knowledge to make a decision regarding the Document. *See O'Connor v. Uber Technologies, Inc.*, 2014 U.S. Dist. LEXIS , at *22 (N.D. Cal. May 2, 2014) (entering a protective order requiring a defendant to provide corrective notice to putative class members and holding that "Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit.") (collecting cases); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 490 (C.D. Cal. 2006). Finally, conditioning the putative class and collective members' continued employment on acceptance of the Document is coercive tactic to prevent their participation in this

class and collective actions.

Other Courts have reached the same conclusion from similar conduct.  Indeed, courts frequently enter protective orders when defendants have sought to obtain releases that omit essential information regarding the claims and putative class actions at issue, because without this information, the defendants' communications are viewed as misleading and therefore abusive. *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Sup. Ed 1149, 1160, at *8 (E.D. Cal. Dec. 18, 2018) ("[T]he Court cannot countenance Defense counsel's actions in attempting to mislead and coerce Defendant's current and former employees into settling prior to certification, possibly adverse to their interests.") *Burford*; 2007 U.S. Dist. LEXIS 1679 , at * 5 ("[T]he Court finds that the use of the general receipt and release which is being used by the Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law.").

Thus, putative class and collective members face great pressure to sign the while lacking the information to understand that they would be waiving their claims in this case.   This is particularly so if the Document was in English as most of the potential Rule 23 Class speaks only Spanish. Furthermore, if Defendants are permitted to continue seeking these releases without informing employees of this case, that may give Defendants the ability to continue violating the law without facing any consequences for doing so.  The Court should not permit Defendants to engage in this conduct.[4]

A.    **The Court Should Enter an Order Invalidating Any Releases That <u>Defendants May Obtain Before This Motion Is Decided</u>**

As stated above, Rule 23(d) gives the Court broad authority to issue orders and "impose conditions on the representative parties" to protect class members and fairly conduct the action at any

---

[4] Plaintiffs urge that, in addition to being ordered to give employees notice of this lawsuit, Defendants should also be prohibited from engaging in other communications with putative class and collective class members that may otherwise undermine their rights in this lawsuit.

stage on the litigation. The FLSA provides similar protections. Courts applying these provisions have found that *ex parte* communications soliciting releases or discouraging participation in a case undermine the purposes of Rule 23 and FLSA and require curative action by the court. This action includes the power to strike any releases or exclusion agreements that result from impermissible communications. *See, e.g., Slavkov v. Fast Water Heater I, LP,* 2015 U.S. Dist. LEXIS 149013 at *20 N. Cal. Nov. 2, 2015) ("A curative notice shall also be sent to all recipients of the Defendants' communications, notifying them that the settlement agreements are invalid."); *Camp v. Alexander,* 300 F.R.D. at 625 (ordering opt-out declarations invalid and requiring corrective notice in the form prescribed by the court).

Plaintiffs request that the Court order that any releases obtained prior to this motion being heard and be declared invalid.

Other courts have issued similar orders. For example, the Eleventh Circuit upheld the district court's invalidation of opt-out forms obtained through *ex parte* telephone calls to a defendant bank's customers. *Kleiner*, 751 F.2d at 1202-03. The court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests...[s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." Id. at 1202-03; *Ontiveros v. Safelite Fulfillment, Inc.,* 2017 U.S. Dist. LEXIS 224785 at *10-11 (C.D. Cal. Oct. 16, 2017) (invalidating releases that were intended to extinguish the claims at issue in the case because the releases did not include sufficient information about the case, and ordering defendant to send a curative notice); *Cheverez v. Plains All American Pipeline, LP*, 2016 U.S. Dist. LEXIS 27818, at *18-19 (C.D. Cal. March 3, 2016) (because "Defendants' misleading actions clearly frustrate the purpose of Rule 23," the court invalidated the releases "to the extent they purport to immunize Defendants from paying full compensation to injured class members" and ordering

13

defendants to provide "curative notice informing claimants of their right to participate in the litigation).

In *Griffin v. Aldi, Inc.,* the defendants distributed a severance agreement with a release of claims without informing the putative collective and class members of a pending FLSA collective and Rule 23 class action lawsuit.  The Court noted that putative collective and class members "can be misled though omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." 2017 U.S. Dist. LEXIS 71840 at *11-12 (citing *County of Santa Clara* v. Astra USA, Inc., 2010 U.S. Dist. LEXIS 78312 at * 15 (N.D. Cal. July 8, 2010); *Friedman v. Intervet Inc.,* 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) ("A defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be 'misleading.'" (collecting cases)); The Court noted that releases obtained before certification of representative claims but without informing releasees of the pending lawsuit are voidable. *Griffin*, 2017 U.S. Dist. LEXIS 71840 at *16 (citing 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 11:1 (13th ed. 2016) (collecting cases).  Employees in this action that executed the releases after the lawsuit was commenced were allowed to participate in the action, effectively voiding the releases for those individuals.

Here, striking or voiding the releases that Defendants have already obtained and may continue to obtain prior to this motion being decided is appropriate, particularly in the employment class action context, where the employer has solicited and is continuing to solicit a release of claims from current employees during a pending class action.  *Ex parte* communications encouraging a release of class and collective claims are likely to be inherently coercive or misleading. *Kleiner*, 751 F.2d at 1206 ("[u]nsupervised communications urging individuals to opt out, by their very nature, are likely to produce distorted statements on the one hand and the coercion of susceptible individuals on the other").

Given the facts here – a release for just $500, despite the fact that the Plaintiffs contend that the putative class and collective members are owed significantly more–the Court's intervention is necessary to protect not only the claims of the putative class and collective members, but also the propriety and fairness of the class and collective action proceeding.  Therefore, in addition to granting a protective order prohibiting Defendants or their counsel from seeking executed Releases from the putative class and collective members, the Court should strike any releases that may have been obtained since this case was filed and before this motion is decided.  The Court's authority includes the power to issue an order ameliorating the effect of past misleading, coercive communications between Defendants and the proposed class by striking the releases. *See Guifu Li*, 270 F.R.D. at 517-19 (refusing to give effect to "opt-out" forms obtained by employer); *Cheeks*, 796 F.3d at 206 (mandating supervision and approval of FLSA settlements and requiring rejection of settlements where terms are unfair or the subject of unequal bargaining power; *Fisher*, 948 F.3d at 599-600.

**B.     The Court Should Enter an Order**
**<u>Invalidating the Document Before This Motion Is Decided</u>**

Defendants' attempts to obtain releases covering claims that are already asserted in this litigation on a class and collective basis should rejected, and any potential executed Arbitration Agreements from the putative class and collective members should be invalidated.  Courts have repeatedly refused to enforce arbitration agreements that would prevent individuals from participating in a putative class and collective action. *Billingsley v. Citi Trends, Inc.,* 560 Fed. Appx. 914, 919, 924 (11th Cir. 2014) (court refused to enforce arbitration agreements that were obtained prior to the issuance of notice and would have prevented employees from participating in a collective action); *Salazar v. Driver Provider Phoenix LLC*, 532 F. Supp. 3d 832, 837 (D. Ariz. 2021) (refusing to enforce arbitration agreement with respect to the pending action and ordering corrective notice where "communication and Agreement were misleading and contained a complete omission of the existence of this action," the Defendant attempted to use the Agreement to bar employees from participating in

this collective action, and where continued employment was conditioned on acceptance of the arbitration agreement, noting low wage workers are particularly vulnerable to such coercive tactics, and noting, and noting there are "a litany of cases where district courts have found arbitration agreements improper or unenforceable when sent to potential class members before certification.") *O'Conner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 603-04 (S.D.N.Y. Mar. 12, 2020) (string cite omitted). *Espinoza v. Galardi S. Enterprises, Inc.*, 2015 U.S. Dist. LEXIS 173408, at * 10-22 (S.D. Fla. Dec. 31, 2015) (refusing to enforce arbitration agreements distributed during the pendency of an FLSA collective action that would have prevented workers from pursuing their claims in the case); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (refusing to enforce arbitration agreements that would prevent putative class members from participating in case).

Here, Defendants' tactics to undermine the putative class and collective action are reprehensible. This was a targeted campaign – instituted soon after this lawsuit was filed – to undermine the very purposes of Rule 23, the FLSA and CO Law and their remedial and protective purposes.[5] Indeed, Defendants' decision to condition the putative class and collective members' continued employment on whether they sign the Document belies any argument that acceptance of this agreement is voluntary.[6] Moreover, this coercive tactic to force employees to choose between their livelihood and accepting the terms of the Document ensures the many of the putative class and collective members will improperly be forced to forgo participation in this class and collective action.

---

[5] If Defendants included a mandatory arbitration agreement in the Document, Courts have found arbitration agreements in other matters involving targeted attempts to combat a litigation through a new arbitration policy. *Chen-Oster v. Goldman, Sachs & Co.,* 449 F. Supp. 3d 216, 266 (S.D.N.Y. 2020) (observing that many cases involving arbitration agreements that are unenforceable or merit corrective notices involve agreements that target the putative class or collective members, as in, *inter alia*, *Billingsley*, 560 F. Appx. at 919 ("defendant rolled out arbitration policy aimed only at collective members in "blitzkrieg fashion" to minimize scope of class"); *OConnor*, 444 F.Supp.3d at 603 ("management 'instituted its novel arbitration policy for the purpose of foreclosing' plaintiffs' participation in the litigation); Kater v. Churchill Downs Inc., 423 F. Supp. 3d 1055, 1059 (W.D. Wash. 2019) (new arbitration provision was "expressly directed at [the pending] lawsuit" to reduce the scope of the putative class).

Worse still, the putative class and collective members were not even informed of this pending representative action and cannot make an informed and reasoned decision regarding whether to accept the Arbitration Agreement.

Additionally, federal courts apply "ordinary state-law principles that govern the formation of contracts to determine whether parties have a valid agreement to arbitrate." *George v. LeBeau*, 455 F.3d 92, 94 (2d Cir. 2006); *Gold v. Deutsch Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (holding that whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of state law); *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (holding that the ultimate question of whether the parties agreed to arbitrate is determined by state law). Here, by failing to inform the putative class and collective members regarding this pending action bearing on their rights, Defendants have provided misleading notices to their employees that preclude them from critical knowledge necessary to reach a meeting of the minds to form the purported contract.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a protective order in its entirety.

Dated:    February 10, 2025
          New York, New York

/s Jacob Aronauer
Jacob Aronauer
*Attorney for Plaintiffs*

17