IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02766-RMR-NRN

WILMAR PEREZ, et al.,

    Plaintiffs,

v.

DENCO CONSTRUCTION, LLC, et al.,
    Defendants.

_____

**DEFENDANT DENCO CONSTRUCTION LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENTS**
_____

Defendant Denco Construction, LLC ("Denco") hereby submits this Motion to Enforce Settlement Agreements entered into between Denco and Plaintiffs Wilmar Perez, Rudy Orantes, and Edgar Suarez Aceros ("Plaintiffs").

**D.C.COLO.LCivR 7.1(a) and Civ. Practice Standard 7.1B Certificate of Conferral:** Undersigned counsel for Defendants conferred with counsel for Plaintiffs on February 27, 2025 and March 3, 2025 via email. Plaintiff's counsel indicated that Plaintiff opposes the relief requested herein.

## BACKGROUND AND PROCEDURAL HISTORY

There have been four named Plaintiffs in this action. Plaintiffs Wilmar Perez, Rudy Orantes, and former Plaintiff Daniel Fuentes—all former Denco employees—commenced this proceeding alleging violations of the Fair Labor Standards Act ("FLSA"), the Colorado Wage Claim Act ("CWCA"), and the Colorado Overtime and Minimum Pay Standards Order ("COMPS") on October 7, 2024. (Doc. 1 (Complaint); Doc. 64 (Second Amended

Complaint) ¶¶ 148-70); Declaration of Bruce Rahmani ("Rahmani Decl.") ¶¶ 4, 7, 10). Mr. Fuentes voluntarily withdrew his claims on November 4, 2024. (Docs. 11, 12). On February 17, 2025, Plaintiffs filed their Second Amended Complaint, which—without leave of Court or consent of Defendants—added Mr. Suarez, another former Denco employee, as a named Plaintiff.[1]

### Plaintiffs Perez and Orantes Have Settled Their Claims Against Defendants.

On January 23, 2025, Plaintiffs' counsel Jacob Aronauer filed a Motion to Compel, Intervene, Settlement Conference, and Attorney Fees ("Plaintiffs' Motion to Compel"). (Doc. 45). In it, he claimed that his purpose in filing the Motion to Compel was "to get Defendants to 'stop.' Specifically, to get Defendants to 'stop' trying to directly settle with Plaintiffs without the benefit of their counsel." (Doc. 45 at 1). It appears this was not Mr. Perez and Mr. Orantes's goal, however. Mr. Orantes decided to directly contact representatives of Denco and, on February 13, 2025—a month after Plaintiffs filed the first iteration of their Motion to Compel (Doc. 36)—Plaintiffs Perez and Orantes both executed settlement agreements with Defendants independent of either party's counsel.[2] (See Rahmani Decl. ¶¶ 5-9; Ex. A (Perez Settlement Agreement); Ex. C (Orantes Settlement Agreement)).

---

[1] Plaintiffs did obtain leave of Court to file their Second Amended Complaint (Doc. 63 at 1). However, their underlying motion did not seek permission to add Mr. Suarez—or any other person—as a plaintiff.

[2] On March 1, 2025, Mr. Aronauer petitioned the Court to withdraw as counsel for Mr. Orantes because he was not responding to Mr. Aronauer's office and had blocked their phone number. (Doc. 82 at 2-3).

2

On February 17, 2025—four days after Mr. Perez and Mr. Orantes executed settlement agreements with Defendants—Mr. Aronauer filed a Second Amended Complaint that identified Mr. Perez, Mr. Orantes, and Mr. Suarez as Plaintiffs. Yet, Mr. Suarez had also settled and released all claims he had against Defendants several months previously on November 11, 2024, after his employment ended and he threatened to bring a lawsuit.[3] (Rahmani Decl. ¶¶ 6-7, Ex. E (Suarez Settlement)).

Mr. Perez and Mr. Orantes each signed English and Spanish language copies of their respective settlement agreements, which state the following:

> In consideration for Employee's entry into this Agreement and the resulting acceptance of the terms and obligations of this Agreement, including but not limited to the waiver and release of all claims against the Company, as is described in paragraph 7 below, and subject to the other provisions of this Agreement, the Company shall pay Employee the total gross sum of $12,000.00, less all applicable withholdings and deductions (the "Settlement Payment").

(Ex. A ¶ 5; Ex. C ¶ 5). Mr. Suarez's agreement has identical language, except that his settlement payment was for $500. (Ex. E ¶ 5).

Paragraph Six of the Plaintiffs' respective settlement agreements state that "[i]n exchange for the Settlement Payment and in consideration of the agreements set forth in this Agreement," Mr. Perez, Mr. Orantes, and Mr. Suarez agreed to release and discharge

---

[3] At the time he filed the Second Amended Complaint, Mr. Aronauer was either unaware of this settlement because his client never told him about it, or he knew about it but nevertheless filed the Second Amended Complaint asserting claims from which Mr. Suarez expressly released Defendants. Mr. Aronauer later acknowledged the existence of Mr. Suarez's release in an email to counsel, and further acknowledged that Mr. Suarez was not working at Denco when he signed it, but nevertheless asserted without explanation that "the 'agreement' is unlawful." (Declaration of Hillary R. Ross ¶ 3; Ex. G (Feb. 28, 2025 Email from Jacob Aronauer)).

3

Defendants and "their present and former officers, directors, employees, agents, representatives, legal representatives, accountants, attorneys, insurers, reinsurers, successors, and assigns" from:

> all claims, demands, and actions of any nature, known or unknown, that Employee may have against Released Parties . . . including but not limited to, any rights or claims under the . . . Fair Labor Standards Act ('FLSA'), 29 U.S.C. §§ 201 *et seq.*; . . . Colorado Wage Claim Act, § 8-4-101, *et seq.*; any applicable Minimum Wage Order and/or Colorado Overtime and Minimum Pay Standards Order; any applicable Colorado Whistleblower law; Colorado Wage Claim Act; Colorado Minimum Wage Act; Colorado False Claims Act; state common law; and any and all other local, state, and/or federal statutory, executive order, or constitutional provisions pertaining to an employment relationship.

(Ex. A ¶ 6; Ex. C ¶ 6; Ex. E ¶ 6). All three Plaintiffs further acknowledged in Paragraph Eight of their settlement agreements that:

> As of the date of execution of this Agreement, Employee states and acknowledges that all earned but unpaid compensation has been paid, all rest and meal periods have been provided where applicable, and that there are no amounts due and owing from any Released Parties except as expressly set forth in this Agreement.

(Ex. A ¶ 8; Ex. C ¶ 8; Ex. E ¶ 8).

Lastly, Paragraph 12 of each of the settlement agreements contains the following acknowledgement: "Employee acknowledges that he or she has had the opportunity to consult with an attorney prior to executing this Agreement." (Ex. A ¶ 12; Ex. C ¶ 12; Ex. E ¶ 12).

Mr. Perez, Mr. Orantes, and Mr. Suarez have since endorsed and cashed the checks that Denco issued to them for entering into their settlement agreements. (Ex. B; Ex. D; Ex. F; Rahmani Decl. ¶¶ 6, 9, 12).

**ARGUMENT**

I. **The Settlement Agreements Are Enforceable Under Colorado Law.**

Colorado looks to common law contract principles in evaluating the enforceability of a settlement agreement. *Siribuor v. UHS of Denver, Inc.*, No. 12-cv-0077, 2012 WL 3590791, at *3 (D. Colo. Aug. 20, 2012). To be enforceable, a settlement agreement must be an enforceable contract. *Id.* A party must establish the essential elements of a contract, which means a "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prods. Int'l, Inc. v. Emo Trans., Inc.*, 962 P.2d 983, 988 (Colo. App. 1997). An enforceable contract requires mutual assent to an exchange between competent parties, with regard to a certain subject matter, for legal consideration. *Palmer v. Salazar*, 324 F. App'x 729, 733 (10th Cir. 2009). The purpose of a signature is to demonstrate "mutuality of assent," which may be shown by the conduct of the parties. *City & Cnty. Of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1480 (D. Colo. 1993); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) ("[T]o enter into a contract, each party must understand and agree to the essential terms and conditions of the claimed contract . . . [which] may be inferred from the conduct and declarations of the parties.").

Under these basic contract law principles, the settlement agreements are unquestionably enforceable. Specifically, Plaintiffs accepted in writing the precise terms of an offer presented by Denco, including the release of all employment claims—including claims brought under the FLSA, CWCA, and COMPS—in exchange for a monetary sum, memorialized in a signed instrument. (*See* Exs. A, C, E). Here, Plaintiffs' signatures

5

executing the settlement agreements (in which a monetary sum was consideration for a release of claims) made it an enforceable contract that released Denco from liability.

II. **<u>Plaintiffs May Not Evade Enforcement of Their Settlements Merely Because This Action Is a Collective Action.</u>**

Courts in this district are reluctant to evaluate agreements that settle FLSA claims. *See Ruiz v. Act Fast Delivery, Inc.*, 14-cv-00870, 2017 WL 11545275, at *3 (D. Colo. Jan. 9, 2017) ("This Court sees no reason why the public policies underlying the FLSA are any more important than those underlying Title VII, the ADA, or other statutes designed to protect employees against discrimination or oppression, all of which may be effectively compromised by the affected employees in a private settlement without requiring court review or approval."). Although the court in *Ruiz* noted that "[t]here may be a small number of employers who will resort to subterfuge, misdirection, or coercion to improperly induce employees into surrendering their FLSA rights," it held that the "appropriate remedy to cure such misconduct is the same remedy used in literally every other context where a settlement is claimed to be coercive, deceptive, or overreaching: upon a proper showing by the employee, the court may set aside the settlement contract . . . ." *Id.* (emphasis added); *see also Fails v. Pathway Leasing LLC*, No. 18-cv-00308, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018) (agreeing with *Ruiz* that the appropriate remedy to cure misconduct related to a settlement agreement is by requiring a "showing by the employee" that the court should invalidate the agreement). No Plaintiff can reasonably argue that their settlement with Denco was "coercive, deceptive, or overreaching." Plaintiffs will thus be unable to establish a basis under FLSA for the Court to invalidate any settlement agreements at present.

6

### III. Plaintiffs May Not Evade Enforcement of Their Settlement Agreements Merely Because the Operative Complaint Asserts that This Is a Class Action

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added); *see also* 7B Fed. Prac. & Proc. Civ. (Wright & Miller) § 1797 ("The 2003 amendments make clear that Rule 23(e) only applies to the 'claims, issues, or defenses of a certified class.' Thus, settlements or voluntary dismissals that occur before class certification are outside the scope of subdivision (e)."). There is no certified class action in this case, nor have Plaintiffs moved to certify a class for purposes of settlement. Therefore, any releases that have been executed to date by Plaintiffs do not fall within the ambit of Rule 23, and they need not be reviewed by the Court. Moreover, while courts have broad authority to protect putative, absent class members, "even 'broad authority' has limits[,]" particularly where "no class has been certified, and the Court has not determined that the requirements for class-action treatment have been met." *Clark v. Hyatt Hotels Corp.*, No. 20-cv-01236, 2020 WL 6870599, at *2 (D. Colo. Oct. 30, 2020).

In *Clark*, for example, the Court denied the defendant's request to order notice to putative class members that they may have been exposed to dangerous levels of carbon monoxide where the class had been certified, and there was no showing that defendant had engaged in improper conduct that undermined the purposes of Rule 23 such that curative action by the court was required. *Id.* at *1- 2. The same principle applies here. As set forth in Section V, *infra*, Plaintiffs have not sufficiently alleged that Defendants engaged in improper conduct with respect to their settlement agreements. The Court

7

should therefore decline to take the dramatic step of invalidating the settlements between Plaintiffs and Denco that are the subject of the instant Motion.

## IV. It Is Immaterial that Plaintiffs' Counsel Does Not Assent to the Settlement Agreements His Clients Executed.

Plaintiffs will likely renew their argument that, because Denco negotiated settlement agreements without the presence of either party's counsel, the agreements should be invalid. This argument lacks merit. As this Court has already recognized, it is neither unethical nor unlawful for represented parties to settle claims independently of their counsel. *See Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1051 (D. Colo. 1999) (observing that Colorado law gives the client the right to control his own case); *Jones v. Jones*, 188 P.2d 892, 893 (Colo. 1948) ("Robert Jones had a right to control his own case. It was for him to determine if, and when, he desired to cease litigating . . . . He had a right also to stipulate for dismissal of his case without the advice, consent or approval of his attorneys . . . the ancient rule . . . permits and encourages parties litigant to meet and adjust their differences, either with or without the presence and aid of their lawyers."). One of the justifications for this rule is particularly salient here—clients sometimes want a quick settlement, whereas their counsel desires a lengthier litigation to increase their legal fees. *See Nichols v. Orr*, 166 P. 561, 563 (Colo. 1917) ("A party, for various reasons, may prefer not to have his attorney present during the compromise negotiations, and may even prefer not to consult with him about them. . . . [H]e may fear that his attorney might attempt to dissuade him from his purpose to settle and succeed in turning him from a course which he desires to pursue.").

This argument also ignores the realities of Plaintiffs' conduct. Mr. Perez has previously asserted that "[o]n multiple occasions employees of Defendants or companies that work with Defendants have tried to directly negotiate with me (without my lawyer present) to settle my claims." (Doc. 59-2 ¶ 2). This ultimately appears to not have greatly troubled Mr. Perez—he executed a settlement agreement three days after he signed his declaration supporting Plaintiffs' Motion for a Protective Order, and he apparently did so without consulting his counsel. Mr. Orantes was similarly represented by Mr. Aronauer, but apparently decided to block Mr. Aronauer's phone after he executed a settlement agreement with Defendants. (*See* Doc. 82 at 1). And, to Denco's knowledge, Mr. Suarez was not represented by Mr. Aronauer when he executed his release in November of 2024.

**V.    The Settlement Agreements Are Not the Result of Subterfuge, Misdirection, or Coercion.**

In situations where an employer is alleged to have improperly induced employees into surrendering their FLSA rights, "the appropriate remedy to cure such misconduct is the same remedy used in literally every other context where a settlement is claimed to be coercive, deceptive, or overreaching: upon a proper showing by the employee . . . ." *Ruiz*, 2017 WL 11545275, at *3. Plaintiffs will be unable to meet that burden in this case. All three were *former* Denco employees at the time they signed their settlement agreements. Thus, any concern with respect to potential coercion that may be present with respect to a settlement with a current employee is simply not present with respect to these settlements.  Mr. Perez and Mr. Orantes had already brought this lawsuit and were seeking to act as representatives of other similarly-situated employees at the time they

9

chose to enter into a settlement; therefore it cannot be said that they unaware of the existence or nature of their claims.

Mr. Suarez also was aware of potential claims he had against Denco, as admits he threatened to sue Denco for the same alleged overtime claims prior to entering into the settlement agreement with Denco. Denco anticipates that Plaintiffs will contend that Mr. Suarez was unaware that what he was signing a settlement agreement and instead he believed it to be an "insurance" document as he claimed during his testimony at the hearing on the Motion for Protective Order. However, this argument fails for two reasons. First, it strains credulity that, in the context of threatening a lawsuit and seeking resolution, Mr. Suarez would not understand that documents he was presented to sign related to resolving those threatened claims. Second, and more importantly, "[a] party cannot void a contract by claiming to be ignorant of its contents." *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994). The fact that Mr. Suarez now claims that he did not understand the Agreement does not render it unenforceable; "if one signs a contract without reading it he is barred by his negligence from claiming he is not bound by what he has signed." *Rasmussen v. Freehling*, 412 P.2d 217, 219 (Colo. 1966). To the extent that the agreement was in English and he could not read it, he has not and cannot show that he was somehow prevented from seeking assistance with translating it prior to signing it. *See Rodriguez v. Sim*, No. C 08-3982 JL, 2009 WL 975457, at *6 (N.D. Cal. Apr. 10, 2009) (refusing to invalidate an arbitration agreement in English where plaintiff claimed she did not read English and did not understand it was a contract because "she had the opportunity to read the agreement (or have it explained or translated, if needed),

10

but she failed to avail herself of that opportunity."). Instead, it appears he chose not to do so. This choice is not grounds for invalidating a settlement agreement.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Enforce.

Dated April 3, 2025.

        FISHER & PHILLIPS, LLP

        *s/ Hillary R. Ross*
        Hillary R. Ross
        Micah D. Dawson
        1125 17th Street, Suite 2400
        Denver, CO 80202
        Telephone: (303) 218-3650
        Facsimile: (303) 218-3651
        hross@fisherphillips.com
        mdawson@fisherphillips.com

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, April 3, 2025, a true and correct copy of the foregoing was electronically filed using the CM/ECF system which shall provide notice and a copy upon all parties.

Jacob Aronauer
The Law Offices of Jacob Aronauer
250 Broadway, Suite 600
New York, New York 10007
jaronauer@aronauerlaw.com
Telephone: (212) 323-6980

*Attorney for Plaintiff*

　　　　　　　　　　　　　　　　　　　　*s/ Lydia Agyemang*
　　　　　　　　　　　　　　　　　　　　Lydia Agyemang, Legal Assistant
　　　　　　　　　　　　　　　　　　　　For Fisher & Phillips, LLP